HEAD & A. *v.* CLARKE & A.

Upon an application to take the poor debtor's oath, if it is alleged by the creditor that the debtor has certain   property not exempt by law, the latter should be   required  by  the magistrates to make an assignment of his interest in such property according to section  5,  chap. 200, of the Rev. Stat.

Such an assignment should be required although the debtor was arrested on an execution against himself and another as partners for a partnership debt, and the  property which he is alleged to have had at the time of his arrest, and  afterwards, was  his  individual property.

Where the debtor had, after his arrest, by his voluntary act, disabled himself to make the assignment required by statute, *held* that this was equivalent to a refusal by him to make such an assignment.

Where a debtor, upon his arrest, had given a bond with a condition, that he should within one year apply to the proper authority and be admitted to take, and actually take, the oath prescribed by law for the relief of poor debtors, or in default thereof surrender himself to prison as prescribed by law, and the oath had been administered to him within the year, but in violation of the provisions of the statute and against the objection of the creditor, *held* that the condition of the bond was not thereby fulfilled.

DEBT on a bond, dated March 25, 1861, in the sum of $2475.00, and signed by John S. Lamprey as principal and the defendants as sureties.    Lamprey living out of the State, no service was made upon him. The plaintiffs recovered judgment against John S. Lamprey and one Charles M. Lamprey, as partners, upon a partnership debt, at the Supreme Judicial Court, in the County of Rockingham, January Term, 1861, for $1201.32 debt, and $19.75 cost, and, having made upon the back of the execution the usual oath that the said John S. and Charles M. Lamprey in their belief were indebted to them and concealed their property so that no attachment or levy could be made, an execution in their favor issued upon said judgment, on February 21, 1861, against the bodies of the said John S. and Charles M. Lamprey, and the said.

John S. Lamprey was duly arrested upon said execution, on March 25, 1861, and was discharged from said arrest upon giving the bond declared on, the condition of which was as follows, to wit: "The condition of this obligation is such, that if the said John S. Lamprey, now a prisoner at the suit of the said Head, Nathaniel M. and Asa Jewell, shall, within one year from the date hereof, apply to the proper authority and be admitted to take and shall actually take the oath or affirmation prescribed by law for the relief of poor debtors, or in default thereof shall surrender himself to prison as prescribed by law, then this obligation to be void."

John S. Lamprey, after his said arrest, and within one year from the date of said bond, made due application to two justices of the peace, and of the quorum, to be admitted to take the poor debtor's oath, upon which application a hearing was had, after due notice, and said justices admitted Lamprey to take, and he did take before them the oath prescribed for the relief of poor debtors, within one year from the date of said bond, and the justices then made their certificate thereof, in due form of law. The plaintiffs appeared before said justices and objected to Lamprey being admitted to take said oath, and alleged, among their objections, that, at the time of his said arrest and afterwards, he was seized and possessed of two tracts of land in Plaistow, and one tract of land in Hampstead, the whole of the value of $1000, and of a quantity of bricks in Plaistow of the value of about $1000, as his own individual property, and, after his said arrest, to wit, on the 15th day of April, 1861, Lamprey conveyed said three tracts of land to George W. Lee, by his three warranty deeds of that date, acknowledged and recorded on the same day, and also on the same day conveyed said bricks to Lee; and these facts were made to appear before the justices, yet they admitted Lamprey to take the oath.

Lee in the year 1860 held promissory notes against Lamprey to the amount of about $3000, and commenced an action against him upon the notes and attached the bricks and real estate, which action was duly entered at the Supreme Judicial Court for said county, and was there pending at the time said conveyances were made; Lamprey made no defence to said action, and testified before the justices, that the notes, which Lee held against him, were just and *bona fide* demands, and of greater amount than the value of the bricks and real estate (and this evidence of Lamprey was not contradicted by the plaintiffs); that, to save the further expense of court and the cost of a levy, it was agreed between Lee and Lamprey, that the value of said bricks and real estate should be determined by appraisers, and applied towards the payment of said notes, and they accordingly agreed upon appraisers, who fixed the value of the bricks and real estate, and Lee took the same at that value in part payment of the notes. The said property was the individual property of Lamprey, and Lee's debt was due from John S. Lamprey alone. The plaintiffs and John S. Lamprey, before the expiration of said year, without the consent or knowledge of the other defendants, agreed to extend the time for the taking of the oath to the 29th day of March 1862, but said time was not extended, Lamprey having taken said oath by per-

mission of the justices before the expiration of the year. Judgment is to be rendered in the action according to the opinion of the court upon the foregoing case.

*Stickney*, for plaintiffs.

*Wood* and *Christie*, for defendants.

BARTLETT, J.   It having been alleged at the hearing before the magistrates, that John S. Lamprey, at the time of his arrest, and afterwards, had certain property not exempt from attachment, if he had made no conveyance of it before the hearing, it would have been the duty of the magistrates to require him to assign his interest in it to the plaintiffs. R. S. ch. 200, sec. 5.   The fact, that the property belonged to him individually, did not exempt it from attachment upon a debt due from the firm of which he was a member, and if the assignment might be ineffectual to hold the property against his individual creditors, yet " the duty to require the assignment does not depend on the fact, that the debtor has an assignable interest, or on the question, what, if any, will be the effect of the assignment." *Sheafe* v. *Laighton*, 36 N. H. 245 & 6.   If the conveyances to Lee were invalid as against such an assignment, no reason exists why it should not have been required, for the creditors would have taken only the interest of John S. Lamprey ; if, however, these transfers were valid, then by his voluntary act Lamprey had, after his arrest, disabled himself from making the assignment required by the statute, and this was equivalent to a refusal to make it.   In either view, the oath was administered to him in violation of the provisions of the statute and is insufficient to satisfy the condition of the bond. *Harding* v. *Butler*, 8 Shepl. 194.   See *Banks* v. *Johnson*, 12 N. H. 451 ; *Parker* v. *Staniels*, 38 N. H. 251 ; *Bunker* v. *Nutter*, 9 N. H. 554 ; *Downer* v. *Hollister*, 14 N. H. 125 ; *Stone* v. *Tilson*, 1 Appl. 265 ; *Hobbs* v. *Fogg*, 6 Gray, 254.

There must be

*Judgment for the plaintiffs.*